# Attachment 1

**IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE**
**TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY**
**AT NASHVILLE**

| | | |
|---|---|---|
| **APPALACHIAN VOICES,** | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TENNESSEE BOARD OF AIR** | ) | **No. _____** |
| **POLLUTION CONTROL,** | ) | |
| | ) | |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **ENVIRONMENT AND** | ) | |
| **CONSERVATION,** | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| **TENNESSEE VALLEY AUTHORITY,** | ) | |
| | ) | |
| *Respondents.* | ) | |

## PETITION FOR JUDICIAL REVIEW

Pursuant to Tenn. Code Ann. §§ 4-5-322(h) and 68-201-108(a), Petitioner Appalachian Voices hereby submits this Petition for Review of the Final Order entered in Administrative Procedures Division ("APD") Case No. 04.09-245974J by the Tennessee Board of Air Pollution Control. *See* **Exhibit A** (Initial Order Granting Mot. for Summ. J., Aug. 20, 2025) ("Order").

### INTRODUCTION

The Tennessee Valley Authority ("TVA") owns and operates an existing coal-fired power plant in Harriman, Tennessee (the "Kingston Coal Plant"). TVA built the Kingston Coal Plant, which consists of nine coal-fired units, in the 1950s. TVA now plans to construct a new methane-fired power plant (the "Kingston Methane Plant"), which would consist of one combined-cycle

electric generating unit, sixteen simple-cycle dual fuel combustion turbines, and additional equipment necessary for operating the new plant. Before construction could begin on the Kingston Methane Plant, TVA was required to obtain an air permit from the Tennessee Board of Air Pollution Control ("Board"). An air permit is required because the Kingston Methane Plant will emit pollution regulated by the federal Clean Air Act and state rules implementing the Act.

In addition to building the Kingston Methane Plant, TVA plans to retire and demolish the Kingston Coal Plant. The Kingston Reservation, a 1,255-acre property owned by TVA in Roane County, Tennessee, is currently home to the Kingston Coal Plant, and it is also where TVA plans to construct the Kingston Methane Plant. TVA plans to build the new methane plant several hundred yards away from the retiring coal plant. The two plants will not be physically attached to one another, and they will occupy wholly separate site footprints. At some point after the Kingston Methane Plant begins operating, TVA plans to shut down the seventy-year-old Kingston Coal Plant.

TVA applied for, and the Technical Secretary of the Board subsequently issued, a "minor New Source Review" permit ("the Permit") authorizing construction of the Kingston Methane Plant as a minor change to the Kingston Coal Plant. Petitioner appealed, and after briefing and oral argument on cross-motions for summary judgment, an administrative judge sitting on behalf of the Board affirmed the Board's decision. Order 1–2.

Through this Petition for Judicial Review, Petitioner requests that the Court review the Board's unlawful decision to authorize construction of the Kingston Methane Plant as a minor "project" at the coal plant instead of as a new major stationary source of air pollution subject to the Clean Air Act's more protective review process under the Prevention of Significant Deterioration ("PSD") Program. Rather than being "modified," the existing stationary source on

2

TVA's Kingston Reservation, the Kingston Coal Plant, is being decommissioned and completely demolished. The Kingston Methane Plant is a separate source that has the potential to emit air pollutants much higher than the threshold for a new major source of air pollution, and its construction must be permitted as such.

The Clean Air Act's PSD program requires that a new major stationary source of emissions in an area that is meeting national ambient air quality standards undergoes a robust permitting process to ensure air quality is protected. This program requires meaningful public participation in the authorizing agency's permitting process, requires that the source's operator utilize the best available technologies to control air emissions on site, and directs that a robust analysis be performed by the source's operator to evaluate its impacts on air quality before it is built and begins operating. *See* 42 U.S.C. § 7475.

TVA's 1950s-era Kingston Coal Plant did not undergo PSD review when it was built, because its construction pre-dated the Clean Air Act. Even after Congress amended the Clean Air Act in 1990 to create the PSD program, TVA was not required to evaluate the impacts of the Kingston Coal Plant's emissions or limit its emissions to the maximum degree achievable using the best available control technology because Congress presumed that old, deteriorating coal plants like TVA's would soon retire and be replaced by new, cleaner plants. Now, decades later, the Board's approval of the new power plant's construction as a minor change to the Kingston Coal Plant improperly allows that historical exemption to carry over to the Kingston Methane Plant, granting perpetual immunity from otherwise applicable emissions control regulations.

Petitioner seeks judicial review of the Board's Order on the grounds that the Board erred as a matter of law when it issued a permit authorizing TVA's construction of the Kingston Methane Plant as a minor change to the existing Kingston Coal Plant. Instead, the Kingston

Methane Plant should be treated as a new major stationary source of air pollution. State and federal law require TVA to obtain a more protective permit pursuant to the Clean Air Act's PSD program due to the amount of pollutants that the Kingston Methane Plant has the potential to emit and the fact that it is an entirely separate plant that TVA intends to operate in lieu of its retiring coal plant.

Petitioner respectfully requests that this Honorable Court reverse the Board's decision that TVA's construction of a brand-new methane-fired power plant was lawfully permitted as a minor "project" at the retiring Kingston Coal Plant and revoke the permit as wrongfully issued.

## PARTIES

1.      Petitioner Appalachian Voices is a non-profit organization organized under the laws of the State of North Carolina. Its principal office is located at 164 South Depot Street, Boone, North Carolina 28607. It also maintains an office at 815 Gill Avenue, Suite 201, Knoxville, Tennessee 37917. Founded in 1997, Appalachian Voices is a regional, grassroots environmental organization dedicated to protecting the land, air, and water of Central and Southern Appalachia and to advancing the transition to an equitable clean-energy economy. Appalachian Voices' membership includes residents who live and recreate in the immediate vicinity of the site where TVA plans to construct its new Kingston Methane Plant and would be harmed by exposure to air pollution resulting from the new plant's emissions.

2.      The Technical Secretary of Respondent Board of Air Pollution Control for the State of Tennessee granted TVA the permit at issue in this case. State law grants the Board, a state agency, "the power and duty to" adopt rules to effectuate the purpose of the Tennessee Air Quality Act, including rules that authorize the Technical Secretary to issue permits in accordance with the federal Clean Air Act. Tenn. Code Ann. § 68-201-105(a)(1). An administrative judge

sitting on behalf of the Board affirmed the Technical Secretary's issuance of the Permit after the parties presented oral argument on cross-motions for summary judgment during a contested case hearing pursuant to the Tennessee Air Quality Act and Uniform Administrative Procedures Act. Order 1–2; *see* Tenn. Code Ann. §§ 4-5-301, 4-5-314, 68-201-108(a)(1).

3.      Respondent Tennessee Department of Environment and Conservation ("Department") participated in the contested case proceedings below. Under state law, the director of the Department's Division of Air Pollution Control "shall be" Technical Secretary of the Board. Tenn. Code Ann. § 68-201-104(c). Department staff performed analyses and made determinations relied upon in the Technical Secretary's decision to issue the Permit. The Tennessee Air Quality Act charges the Department, alongside the Board, with the "prevention, abatement and control of air pollution by all practical and economically feasible methods." Tenn. Code Ann. § 68-201-103.

4.      Respondent TVA applied for and received the Permit at issue in this case. TVA participated as an intervenor in the contested case proceedings below. TVA is a public utility owned by the United States government that delivers electricity to the Tennessee Valley region largely via distribution to local power companies. TVA is headquartered in Knoxville, Tennessee. TVA owns and operates the Kingston Coal Plant and would be the owner and operator of the planned Kingston Methane Plant.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action in accordance with the provisions of the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322(a)(1).

6.      Venue is proper in the chancery court of Davidson County pursuant to the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322(b)(1)(A)(ii).

5

## FACTUAL AND PROCEDURAL HISTORY

7.    This petition arises from an order rendered in a contested case proceeding pursuant to the Tennessee Air Quality Act and Uniform Procedures Act, Tenn. Code Ann. §§ 4-5-301, 4-5-314, 68-201-108(a), after Petitioner petitioned the Board for review of the Permit issued by the Technical Secretary. *See* Tenn. Code Ann. §§ 4-5-322(a)(1), 68-201-108(a)(1).

### A.    The Permit

8.    The Department prepared the subject permit, Construction Permit No. 981915, and the Technical Secretary of the Board of Air Pollution Control then issued that permit. The Permit authorized construction of the Kingston Methane Plant, a new methane-fired[1] power plant on the same large parcel of land where TVA operates the existing Kingston Coal Plant in Harriman, Tennessee.

9.    As TVA set forth in its construction permit application, the Kingston Methane Plant has the potential to emit more than 100 tons per year ("tpy") of six pollutants regulated under the Clean Air Act: carbon monoxide (392 tpy), nitrogen oxides (1,172 tpy), particulate matter (163 tpy), particulate matter with a diameter of 10 microns or less (220 tpy), particulate matter with a diameter of 2.5 microns or less (220 tpy), and carbon dioxide equivalents (4,362,492 tpy). *See* TVA, Kingston Fossil Plant Combined Cycle Project Air Permit-to-Construct Application at 3-1 tbl.3-1 (Oct. 28, 2024),

https://dataviewers.tdec.tn.gov/dataviewers/f?p=19031:34051::::34051:P34051_PERMIT_ID:98595.

---

[1] TVA and the Department refer to "natural gas" for the fuel to be used at TVA's Kingston Methane Plant. "Natural gas" is composed primarily of fracked methane, so Petitioner uses the term "methane gas" to refer to the fuel. *Learn About Natural Gas*, ENBRIDGE, https://www.enbridgegas.com/about-enbridge-gas/learn-about-natural-gas (last visited Nov. 17, 2025) (describing "natural gas" as typically being composed of 94.6% methane); *What Is Natural Gas?*, AM. PETROL. INST., https://www.api.org/news-policy-and-issues/natural-gas-solutions/what-is-natural-gas (last visited Nov. 17, 2025).

10. TVA plans to retire and demolish the Kingston Coal Plant due to its age and deteriorating condition and to construct the Kingston Methane Plant to ultimately operate in lieu of the coal plant. Petitioner objects to the Board's decision to authorize TVA's construction of its new plant as a minor "project" at TVA's retiring coal plant, rather than as a "new major stationary source." By falsely classifying TVA's new plant as a minor change at its existing plant that is already slated for retirement and complete demolition, the Board unlawfully enabled TVA to evade the protective requirements of the Clean Air Act and Tennessee's regulations implementing the Act.

11. The Clean Air Act's PSD program is designed to ensure that pollution from new major stationary sources does not significantly degrade existing air quality. In circumventing the PSD program, TVA avoided the requirement to perform a robust analysis of the new plant's impacts on local air quality and visibility in special places such as Great Smoky Mountains National Park. *See* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(e). TVA also avoided the requirement to reduce the new plant's emissions to the maximum degree achievable using the best available control technology. Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(j). In addition, the Board avoided the requirement to provide the public with meaningful opportunities to participate in the permitting process, including the opportunity to review and comment on a draft permit. *See* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(l).

12. Applying the logic from the Board's decision going forward, TVA could replace deteriorating power plants located at its expansive Kingston Reservation, or any of its other properties, in perpetuity, without ever complying with the PSD program's requirements for pollution control, public participation, and ambient air quality impact analysis. That outcome circumvents both the federal Clean Air Act and Tennessee's implementing regulations.

7

13.     Petitioner commented on TVA's permit application in response to the Department's public notice and submitted supplemental comments months later when TVA amended and re-submitted its application, despite a lack of any notice from the Board. *See* Order 3, ¶¶ 7–9.

14.     On November 15, 2024, the Technical Secretary issued the Permit on behalf of the Board. Order 3, ¶ 10.

**B.     Permit Appeal and Contested Case Proceedings**

15.     Petitioner filed its petition for permit appeal on December 16, 2024. Order 3, ¶ 12. Pursuant to Tenn. Code Ann. § 68-201-108(a), the Department initiated a contested case hearing before the Board. Petitioner, Department, and TVA all submitted pre-hearing cross-motions for summary judgment, responses to motions for summary judgment, and replies in support. Order 4–6.

16.     On June 24, 2025, Administrative Judge ("AJ") Claudia Padfield heard oral argument on the cross-motions for summary judgment. Order 1.

17.     On August 20, 2025, AJ Padfield issued an initial order, comprised of findings of fact and conclusions of law. The Order granted the Department's motion for summary judgment, denied Petitioner's motion for summary judgment, and denied TVA's motion for summary judgment as pretermitted by resolution of the Department's motion. Order 1–2.

18.     On October 8, 2025, the initial order was included on the agenda at the Board of Air Pollution Control's regularly scheduled meeting. Upon motion and second, the Board voted not to review the initial order. *See* **Exhibit B** (Not. of Filing, Oct. 10, 2025).

19.     Pursuant to Tenn. Code Ann. §§ 68-201-108(a), AJ Padfield's initial order subsequently became a final order and "shall be deemed to be a decision of the [B]oard . . . for purposes of the standard of review by a court." Tenn. Code Ann. § 68-201-108(a)(1). As "[a]

person who is aggrieved" by that final decision, Tenn. Code Ann. § 4-5-322(a)(1), Petitioner now brings the instant petition for judicial review.

## STANDARD OF REVIEW

20.     Tennessee's Uniform Administrative Procedures Act authorizes this Court to reverse or modify the Board's decision if it proves to be any of the following:

| | |
|---|---|
| (1) | In violation of constitutional or statutory provisions; |
| (2) | In excess of the statutory authority of the agency; |
| (3) | Made upon unlawful procedure; |
| (4) | Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or |
| (5)(A)(i) | . . . [U]nsupported by evidence that is both substantial and material in light of the entire record. . . . |

Tenn. Code Ann. § 4-5-322(h)(1)–(h)(5)(A)(i).

21.     A court in this context reviews questions of law *de novo*, without any presumption of correctness. *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019); *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009); *Roberts v. Tenn. Dep't of Env't & Conservation*, 716 S.W.3d 68, 72 (Tenn. Ct. App. 2025). The Uniform Administrative Procedures Act dictates that "a court presiding over the appeal of a judgment in a contested case shall not defer to a state agency's interpretation of the statute or rule and shall interpret the statute or rule de novo." Tenn. Code Ann. § 4-5-326.

22.     Under the Tennessee Air Quality Act, the Order petitioned here for review should be treated as a decision of the Board of Air Pollution Control. Tenn. Code Ann. § 68-201-108(a)(1).

## STATUTORY AND REGULATORY BACKGROUND

23.     The case presented relies on the federal Clean Air Act and the federally approved state regulations promulgated to implement and enforce the Act in Tennessee.

9

**A.      Federal Air Quality Laws and Permitting Requirements**

24.      Congress enacted the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). State agencies that issue permits for sources of air pollution must comply with the Clean Air Act's substantive and procedural requirements, including those established under the PSD program applicable to new major stationary sources. *See* 42 U.S.C. § 7410(a)(2).

25.      Congress established the PSD program primarily to "protect public health and welfare" against the adverse impacts of air pollution; "preserve, protect, and enhance the air quality in national parks" and other notable areas; and ensure that emissions from a source in one state will not interfere with another state's efforts to preserve good air quality. 42 U.S.C. § 7470(1)–(2), (4).

26.      To achieve its objectives, the PSD program requires new major stationary sources of air pollution to undergo a rigorous pre-construction process before receiving a permit. The process aims to ensure the source's new emissions will not significantly deteriorate existing air quality, exceed health-based air quality standards, or adversely impact visibility in protected areas. *See, e.g.*, 42 U.S.C. §§ 7410(a), 7475(a), (d), (e); 40 C.F.R. § 51.166(k)(1), (m), (o), (p); Tenn. Comp. R. & Regs. 1200-03-09-.01(4).

27.      Facilities subject to the PSD program must limit their emissions to the maximum degree achievable when using the "best available control technology" ("BACT"), for each regulated pollutant. 40 C.F.R. § 51.166(a)(12), (j)(2); Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(b)53., (j)2. That standard ensures that new facilities are constructed with modern pollution-controlling equipment or best practices that have been proven to be cost-effective within the industry at reducing air pollution.

28. Facilities subject to the PSD program must also conduct a robust source impact analysis to show that construction and operation of the new major stationary source will not cause or contribute to an exceedance of any national ambient air quality standards, which are set according to federal findings on healthy air quality levels. 42 U.S.C. § 7475(a)(3)(B), (e)(1), (e)(3)(B); *see also* 40 C.F.R. § 51.166(k), (l), (m); Tenn. Comp. R. & Regs. 1200-03-09-.01(e). That impact analysis gives the permitting authority and the public essential information regarding the new source's relative effect on surrounding air quality, including whether its operation will result in concentrations of pollutants that are presumed to be harmful to public health. 42 U.S.C. § 7475(a)(2).

29. The PSD program also requires that the permitting authority provide "adequate procedural opportunities for informed public participation in the decisionmaking process." 42 U.S.C. § 7470(5). The Clean Air Act therefore prohibits construction of new major sources absent "a public hearing" hosted by the permitting authority "with opportunity for interested persons . . . to appear and submit written or oral presentations on the air quality impact of [the new] source, alternatives thereto, control technology requirements, and other appropriate considerations." 42 U.S.C. § 7475(a)(2); *see* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(l).

**B.      Tennessee's State Implementation Plan**

30. Tennessee manages a federally required "state implementation plan," which lays out the state's measures for implementing and enforcing the Clean Air Act requirements. One such set of measures is the regulations issued by the Department's Division of Air Pollution Control requiring new major stationary sources and major modifications to existing major stationary sources to go through the PSD program's permitting process. Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(a)1., (a)2., (b)1., (b)2. Tennessee's regulations that comprise its state implementation plan are submitted to, and approved by, the U.S. Environmental Protection

Agency. 42 U.S.C. § 7410(a), (k), (l). Tennessee's PSD program regulations were most recently incorporated into its state implementation plan on October 24, 2022. *See* Air Plan Approval; TN Final Rule, 87 Fed. Reg. 64,165, 64,166 (Oct. 24, 2022) (codified at 40 C.F.R. pt. 52).

31.      Tennessee's air quality regulations "are based upon the premise that the basic and foremost function of the air is to sustain life and that the air in its purest state is best suited for this need." Tenn. Comp. R. & Regs. 1200-03-01-.01(2). Tennessee's regulations similarly recognize that "[p]olluted air can be a menace to all forms of life and, therefore, the disposal of wastes into the atmosphere must be controlled" and "[w]hen a health hazard is involved, there can be no compromise." Tenn. Comp. R. & Regs. 1200-03-01-.01(3)–(4).

**C.      New Major Stationary Sources vs. Projects at Existing Sources**

32.      To enforce the Clean Air Act's PSD program, Tennessee's rules subject major new stationary sources to the program's more protective requirements if they meet certain applicability criteria. Those criteria include any new "[f]ossil-fuel fired steam electric plants of more than 250 million [British thermal units] per hour heat input" that will actually or potentially emit at least 100 tons per year of any regulated air pollutant. Tenn. Comp. R. & Regs. 1200-03-.01(4)(b)1.(i)(I); *see also* 42 U.S.C. § 7479(1).

33.      Under Tennessee's PSD regulations, construction of or at a major stationary source is permitted under one of two distinct categories: either it is a "*new* major stationary source," or it is a "*project* at an *existing* major stationary source." Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(c)1. (emphases added); 40 C.F.R. § 51.166(a)(7)(i).

34.      A *new* "major" stationary source is one that has the potential to emit more than a minimum threshold amount of regulated air pollutants. Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(b)1.(i) (specifying twenty-eight source categories for which the applicable threshold is 100 tons per year of any regulated pollutant); 40 C.F.R. § 51.166(b)(1)(i)(A); *see also* Tenn.

Comp. R. & Regs. 1200-03-09-.01(4)(b)1.(ii) (applying a threshold of 250 tons per year for all other source categories outside the twenty-eight listed sources); 40 C.F.R. § 51.166(b)(1)(i)(B) (same). Construction of a new major stationary source is subject to the Clean Air Act's PSD program. Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(c).

35.     On the other hand, a *project* consists of a "physical change in, or change in method of operation of, an *existing* major stationary source." Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(b)49. (emphasis added); *see also* 40 C.F.R. § 51.166(b)(51). Undergoing PSD review is required for certain "projects" that rise to the level of a "major modification"; otherwise, a "project" is subject to the less protective permitting process referred to as minor New Source Review. *See* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(c)4.(i); 40 C.F.R. § 51.166(a)(7)(iv)(A). Not all "projects" are subject to the safeguards provided by the PSD program.

36.     The Clean Air Act's PSD program requires that a source will, *inter alia*, reduce its air pollution to the level achievable using the best available control technology, avoid causing a significant deterioration of air quality or an exceedance of ambient air quality standards, and avoid causing an adverse impact on visibility in protected areas. *See, e.g.*, Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(e), (i), (j), (n); *see also* 42 U.S.C. §§ 7475(a)(3)–(4), (d)(2), (e); 40 C.F.R. § 51.166(j)(2)–(3), (k)(1), (o)(1), (p).

37.     The Clean Air Act's PSD program ensures that members of the public have a meaningful opportunity to offer written and/or oral comments on the draft permit for a proposed major source. *See* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(l)2.(iii)–(v); 42 U.S.C. § 7475(a)(2); 40 C.F.R. § 51.166(q)(2)(iii)–(v).

**LEGAL VIOLATION**

The Permit was improperly issued as a minor New Source Review permit for a project at the existing Kingston Coal Plant, rather than a PSD permit for a new major stationary source. Under applicable state regulations and federal law, the Kingston Methane Plant will be an entirely independent, standalone power plant with potential emissions that exceed the threshold for a new major stationary source, not a mere "project" at the Kingston Coal Plant. Because the permitted activity at issue, construction of the Kingston Methane Plant, does not constitute "a physical change in" or a "change in the method of operation of" TVA's existing Kingston Coal Plant, the Technical Secretary erred in permitting the new power plant as a "project" at TVA's coal plant, rather than as a new major stationary source subject to PSD review. *See* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(b)1.(i)(I), (b)49.; 40 C.F.R. § 51.166(b)(1)(i)(A), (b)(51). The administrative judge, sitting on behalf of the Board, then erred as a matter of law by affirming that wrongly issued permit.

That erroneous legal conclusion was predicated upon additional errors, which are laid out below.

**A.     It was arbitrary and capricious to determine that the Kingston Methane Plant is a "project" at the Kingston Coal Plant.**

Because the construction of the new power plant would not constitute "a physical change in" or a "change in the method of operation of" TVA's existing coal plant, the Technical Secretary erred in permitting the new power plant as a "project" at TVA's existing coal plant. *See* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(b)1.(i)(I), (b)49.; 40 C.F.R. § 51.166(b)(1)(i)(A), (b)(51).

The Kingston Methane Plant meets the statutory definition of a new major stationary source and should have been permitted as such. There is no evidence that building and operating

the new plant would involve retrofitting or otherwise adapting the existing source, the Kingston Coal Plant, to run on methane gas rather than coal. Under federal and state law, a fossil-fuel steam electric plant with a heat input capacity of at least 250 million British thermal units per hour ("MMBtu/hr") is a "major" stationary source if it could emit at least 100 tons per year of any regulated pollutant. Tenn. Comp. R. & Regs. 1200-03-09-.01(b)1.(i)(I); *see also* 42 U.S.C. § 7479(1); 40 C.F.R. § 51.166(b)(1)(i)(A). The record demonstrates that, if constructed, TVA's new methane plant would meet that statutory definition. The new facility constitutes a fossil-fuel fired steam electric plant with a heat input capacity of more than 250 MMBtu/hr, and the information put forth in TVA's own application show the Kingston Methane Plant will have the potential to emit more than 100 tons per year of each of the following regulated pollutants: carbon monoxide, nitrogen oxides, particulate matter, coarse particulate matter, fine particulate matter, and carbon dioxide. *See* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(b)1.(i)(I), (4)(b)13.; 40 C.F.R. §§ 51.165(a)(1)(xxxvii), 51.166(b)(49).

When Congress amended the Clean Air Act to create the PSD program in 1990, it exempted existing facilities like coal plants from its requirements based on the assumption that these older, deteriorating sources of air pollution would soon retire and be replaced by new, PSD-compliant sources. Instead, the Order effectively authorizes perpetual immunity from PSD for any sources of air emissions that TVA constructs on the Kingston Reservation, allowing the repeated construction of new major stationary sources that are exempt from PSD program requirements indefinitely into the future, without meaningful public engagement. The Permit issued by the Technical Secretary and affirmed by the Board contravenes the plain language of state and federal law as well as the legislative intent for new major sources of air pollution to minimize their pollution using modern, proven, and cost-effective emissions controls. *See* 42

U.S.C. § 7470; Tenn. Code Ann. § 68-201-103; Tenn. Comp. R. & Regs. 1200-03-01-.01(2)–(4); 1200-03-09-.01(4)(b)53. Because the Permit "fails to comply" with state and federal law as issued, it should accordingly be vacated and revoked. *See* Tenn. Comp. R. & Regs. 1200-03-09.03(7).

**B.**    **It was arbitrary and capricious for the administrative judge to include findings of fact premised upon determinative conclusions of law.**

The Order sets forth "findings of fact" that are premised upon unsubstantiated and erroneous legal conclusions. By referring to TVA's proposed construction of the Kingston Methane Plant as the "Kingston Plant Project," the Order embedded into its factual findings a legal conclusion regarding the meaning of the term "project," which is a regulatory term of art with a specific definition that is central to this case. *See* Order 3, ¶ 13; *see also* Tenn. Comp. R. & Regs. 1200-03-09-.01(4)(b)49. (defining "project" as "a physical change in, or change in the method operation of, an existing major stationary source"). To utilize the term "project" in this way incorrectly presumes that TVA's proposed construction of the Kingston Methane Plant would involve a physical change to, or change in the method of operation of, TVA's coal plant. Not only does this terminology conflate factual findings with legal conclusions, it also conflicts with the undisputed material facts in the record. Neither TVA nor the Board ever presented any evidence showing that construction of the methane plant would physically or operationally change the existing coal plant.

Relatedly, the Order twice mischaracterizes the Kingston Methane Plant and the Kingston Coal Plant as comprising the same "existing stationary source." *See* Order 4, ¶¶ 20–21. To the extent the administrative judge, on behalf of the Board, found an as-yet-unconstructed methane plant to be an "existing" stationary source, that finding was unsubstantiated by any material evidence. TVA applied for authorization to *construct* a brand-new, freestanding methane-fired

power plant, a new major stationary source that does not yet exist. The Order's mention of "a single stationary source" was miscategorized as a finding of fact when it instead contains a legal conclusion that Petitioner contests.

**C.     The record is devoid of any factual evidence to support several of the administrative judge's findings of fact.**

The Order mischaracterized TVA's permit application as one "to renew the Title V Permit" for the Kingston coal-fired power plant. Order 2–3, ¶ 5. That mistake infected the Order's analysis, conflating the existing source, which is subject to an *operating* permit known as Title V Permit No. 572149 (nine coal-fired EGUs and associated equipment), with the new source for which TVA sought and obtained a *construction* permit known as Permit No. 981915 (the combined-cycle plant and sixteen aeroderivative combustion turbines). *See* Order 2–3 ¶¶ 2–6. The Board was not asked to review the validity of TVA's Title V Permit for the Kingston Coal Plant, nor was it asked to review any permit involving the coal-fired units, which may have contributed to the ultimate error in the administrative judge's conclusion that construction of TVA's new methane plant somehow constituted a "project" at its coal plant. *Cf. Laidlaw Env't Servs. of Nashville, Inc. v. Metro. Bd. of Health for Nashville & Davidson Cnty.*, 934 S.W.2d 40, 50 (Tenn. Ct. App. 1996) (reversing local board of health's permitting decision in part because it had "improperly" treated multiple different permits "as if they were one permit").

**RELIEF REQUESTED**

WHEREFORE, Petitioner respectfully requests this Court:

A.      Review the Board's order granting the Department's motion for summary judgment and denying Petitioner's motion for summary judgment;

B.      Vacate the Board's decision affirming the issuance of Construction Permit No. 981915 by the Technical Secretary as a "minor New Source Review" permit not subject to PSD review;

C.      Remand the contested case to the Board with instructions to revoke Construction Permit No. 981915; and

D.      Grant such further relief as this Court deems just and equitable.

DATED: November 18, 2025                Respectfully submitted,

                                                  */s/ Delaney King*
                                                  Delaney King, TN BPR No. 041512
                                                  George Nolan, TN BPR No. 014974
                                                  Southern Environmental Law Center
                                                  1033 Demonbreun Street, Suite 205
                                                  Nashville, TN 37203
                                                  Telephone: (615) 921-9470
                                                    Facsimile: (615) 921-0811
                                                    Email: dking@selc.org
                                                  Email: gnolan@selc.org

# Exhibit A



**State of Tennessee**
# Department of State
Administrative Procedures Division
312 Rosa L. Parks Avenue
William R. Snodgrass Tower
Nashville, Tennessee 37243-1102
Phone: (615) 741-7008/Fax: (615) 741-4472

**August 20, 2025**

Caroline Cress, Esq.
Southern Environmental Law Center
136 East Rosemary Street Suite 500
Chapel Hill, NC 27514
Sent via email only to: ccress@selc.org

Delaney King, Esq.
Southern Environmental Law Center
1033 Demonbreun Street
Suite 205
Nashville, TN 37203
Sent via email only to: dking@selc.org

George Nolan, Esq.
Southern Environmental Law Center
1033 Demonbreun Street
Suite 205
Nashville, TN 37203
Sent via email only to: gnolan@selc.org

Keri N. Powell, Esq.
Southern Environmental Law Center
10 10th Street NW
Suite 1050
Atlanta, GA 30030
Sent via email only to: kpowell@selc.org

Jennifer L. Brundige, Esq.
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902
Sent via email only to: jlbrundige@tva.gov

Austin Moore, Esq.
Tennessee Dept. of Environment and
Conservation
Davy Crockett Tower, 5th Floor
500 James Robertson Parkway
Nashville, TN 37243
Sent via email only to:
austin.moore@tn.gov

Michael D. Lewis, Esq.
Tennessee Dept. of Environment and
Conservation
Davy Crockett Tower, 5th Floor
500 James Robertson Parkway
Nashville, TN 37243
Sent via email only to:
michael.d.lewis@tn.gov

Frances Regina Koho, Esq.
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902
Sent via email only to:
frkoho@tva.gov

**RE: APPALACHIAN VOICES V. TENNESSEE DEPARTMENT OF ENVIRONMENT**

    **AND CONSERVATION, APD Case No. 04.09-245974J**

Enclosed is an *Initial Order,* including a *Notice of Appeal Procedures,* rendered in this case.

Administrative Procedures Division
Tennessee Department of State

Enclosure(s)

**BEFORE THE TENNESSEE BOARD OF AIR POLLUTION CONTROL**

IN THE MATTER OF:

**APPALACHIAN VOICES,**
      *Petitioner*,

*v.*

**TENNESSEE DEPARTMENT OF**
**ENVIRONMENT AND**
**CONSERVATION,**
      *Respondent*,

*v.*

**TENNESSEE VALLEY AUTHORITY,**
      *Intervenor*.

**APD Case No. 04.09-245974J**
**TDEC Case No. APD24-0247**

<u>**INITIAL ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to TENN. CODE ANN. §§ 68-201-108(a)(1), 4-5-301(a)(2), and 4-5-314(b), this contested case is pending before Administrative Judge Claudia Padfield.[1] Currently pending are three summary judgment motions. A motion hearing was held via videoconference on June 24, 2025. Attorney Keri Powell represented Petitioner, Appalachian Voices. Attorney Thomas Lewis represented Respondent, the Tennessee Department of Environment and Conservation (TDEC). Attorney Jennifer Brundige represented Intervenor, the Tennessee Valley Authority (TVA).

All three parties filed a motion for summary judgment, memorandum of law, and statement of undisputed material facts on March 14, 2025. Responses were filed on April 14, 2025, and replies to the responses were filed on April 28, 2025. Appalachian Voices filed a proposed order on August 12, 2025; TDEC and TVA filed a joint proposed order on the same day.

Based upon a review of the record and the written and oral arguments of the parties, it is

---

[1] Judge Padfield has been assigned by the Administrative Procedures Division (APD) of the Office of the Tennessee Secretary of State to preside over this case, sitting alone on behalf of the Tennessee Air Pollution Control Board.

determined that there are no material facts in dispute and that TDEC is entitled to summary judgment as a matter of law. Accordingly, TDEC's MOTION FOR SUMMARY JUDGMENT is **GRANTED**. TVA's MOTION FOR SUMMARY JUDGMENT is denied as pretermitted by resolution of TDEC's MOTION. Appalachian Voice's MOTION FOR SUMMARY JUDGMENT is **DENIED**. Appalachian Voice's Petition for Permit Appeal is **DENIED**.

FINDINGS OF UNDISPUTED FACTS[2]

1.      The Kingston Power plant ("Kingston Plant") is a coal-fired power plant that was constructed in the 1950s. It is owned and operated by TVA.

2.      On January 15, 2018, the Board issued a Title V operating permit number 572149 to the Kingston Plant. As amended and modified, this operating permit states that the Kingston Plant currently operates nine coal-fired electrical generation units ("coal EGUs") that belong to Major Group 49 of the Standard Industrial Classification Manual, 1972, as amended by the 1977 Supplement.

3.      In addition to the coal EGUs, the Kingston Plant consists of a coal handling facility, a limestone handling process, a dry fly ash handling facility, a gypsum dewatering and handling facility, two diesel-fired emergency engines, a bottom ash dewatering plant, and a coal screening operation.

4.      The Kingston Plant is located on the southwestern portion of a 1,255-acre property owned by TVA, known as the Kingston Reservation, in Roane County, Harriman, Tennessee.

5.      On or about November 3, 2023, in an application dated November 1, 2023 (Kingston Plant Project),[3] TVA applied to the Board to renew the Title V Permit. The renewal was

---

[2] Each party submitted its own undisputed material facts. The language used herein is a summary; any reservations or clarifications will be noted *infra*.

[3] Appalachian Voices has referred to the Kingston Plant Project as a new plant or a methane plant.

an application to modify the Kingston Plant by retiring the coal EGUs and replacing with natural gas EGUs.

6.      TVA submitted an amended application, dated December 20, 2023, for the Kingston Plant Project on or about December 27, 2023.

7.      TDEC published TVA's permit application for public review and comment in the spring of 2024.

8.      Appalachian Voices submitted written comments opposing TVA's permit application.

9.      On or about October 29, 2024, TVA submitted a second amended application, dated October 28, 2024, for the Kingston Plant Project.

10.     On November 15, 2024, the Board issued the requested permit to TVA.

11.     After the issuance of the permit, TDEC posted the Construction Emissions Summary Report to TDEC's website containing information about the regulatory basis for issuing the permit and responses to Appalachian Voice's comments.

12.     On December 16, 2024, Appalachian Voices filed its appeal of the permit.

13.     The Kingston Plant Project consists of retiring and demolishing the existing coal EGUs after constructing and operating a combined cycle electric generating unit, one boiler, 16 simple-cycle dual fuel combustion turbines, five heaters, and one emergency generator at the Kingston Plant.

14.     TVA will be the owner and operator of the natural gas EGUs.

15.     The natural gas EGUs will also belong to Major Group 49 of the Standard Industrial Classification Manual.

16. The Kingston Plant Project will be entirely constructed within the boundary of the Kingston Reservation.

17. The Kingston Plant Project will be on the contiguous property where the current coal EGUs are located.

18. The construction of the natural gas EGUs and the subsequent decommissioning of the coal EGUs is a single project.

19. The natural gas EGUS, out of necessity, must be built and operational before the coal EGUs are decommissioned to ensure that TVA can continue to provide energy to its customers.

20. The Kingston Plant Project is a modification of the existing stationary source.

21. The Kingston Plant is a single stationary source.

22. The Title V Permit requires that the coal EGUs cease operation upon completion of the natural gas EGUs but no later than December 31, 2027.

APPLICABLE LAW

Each party filed a MOTION FOR SUMMARY JUDGMENT pursuant to TENNESSEE RULE OF CIVIL PROCEDURE 56. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." TENN. R. CIV. P. 56.04; *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 250-52, 264-65 (Tenn. 2015), *cert. denied*, 578 U.S. 1003 (2016). The party seeking summary judgment has the burden of persuading the court that its motion satisfies the requirements of RULE 56. *Id.* When considering a summary judgment motion, the court must view the evidence in the

light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Huggins v. McKee*, 500 S.W.3d 360, 364 (Tenn. Ct. App. 2016).

When the movant files a properly supported RULE 56 Motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Conclusory allegations and generalizations in opposition to a properly supported RULE 56 motion are insufficient and will not create a material factual dispute sufficient to prevent the trial court from granting a summary judgment. *Psillas v. Home Depot, U.S.A., Inc*., 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001); *Davis v. Campbell*, 48 S.W.3d 741, 747 (Tenn. Ct. App. 2001). Such opposition must be made by identifying evidence in the record which indicates disputed material facts. *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

For facts to be considered at the summary judgment stage, they must be included in the Record pursuant to RULE 56, and they must be admissible in evidence. *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009). When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on whether (1) the evidence establishing the facts is admissible, (2) a factual dispute actually exists, and, if a factual dispute exists, (3) the factual dispute is material to the grounds of the summary judgment. *Huggins*, 500 S.W.3d at 364.

Summary judgment should be granted only if the uncontroverted facts presented and conclusions to be drawn from the facts make it so clear that a reasonable person can reach only one conclusion. *Yount v. FedEx Express*, No. W2015-00389-COA-R3-CV, 2016 WL 1056958, at *3 (Tenn. Ct. App. March 17, 2016). Summary judgment is a preferred vehicle for disposing of purely legal issues. *See Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31 (Tenn. 1988). Summary judgment is appropriate when the tribunal

determines there is no issue of material fact to consider at trial. The goal of summary judgment is to avoid the time and expense of unnecessary trials.

All three parties agree there are no genuine disputes as to any material facts. To the extent the parties have disputed certain factual allegations, none of the disputed facts are material to the substantive claim at issue.

<u>ANALYSIS *and* CONCLUSIONS OF LAW</u>

This contested case arises from TDEC's issuance of a permit to TVA on November 15, 2024. Appalachian Voices timely appealed. This contested case was initiated based upon Appalachian Voices' appeal.

The Board has jurisdiction to hear and render a decision in this contested case. TENN. CODE ANN. § 68-201-105(a)(2). The undersigned administrative judge was assigned to hear this matter, sitting alone, on behalf of the Board. TENN. CODE ANN. § 68-201-108(a)(1)-(2). The Board, not TDEC, is the "agency." TENN. CODE ANN. §§ 4-5-102(2) and 68-201-104(a).

In this contested case, Appalachian Voices has the burden of proof by a preponderance of the evidence that the permit was issued in error. TENN. COMP. R. & REGS. 1360-04-01-.02(3). The sole legal issue is whether the permit lawfully authorized the Kingston Plant Project as a minor modification of an existing stationary source rather than the construction of a new stationary source.

The federal Clean Air Act requires Tennessee to have a "New Source Review (NSR)" permitting program to regulate the construction of new stationary air contaminant sources and modification of existing sources. 42 U.S.C. §§ 7410(a)(2)(3) and 7411. The NSR program requires sources to obtain a preconstruction permit—commonly known as construction permits—if a new or modified source emits air contaminants above certain levels. 42 U.S.C. §§ 7475 and 7502; 40

C.F.R. §§ 51.165-51.166. NSR construction permits are divided into two categories: major NSR permits for "major sources" and minor NSR permits for "minor sources." *See* 74 Fed. Reg. 51,418 & 51,421 (Oct. 6. 2009).

Major NSR applies either when a "new" source is built with the potential to emit certain air contaminants above a specified threshold or when an existing source undergoes a "major modification" resulting in significant emission increases. *See* 40 C.F.R. § 51.166(a)(7). Major NSR permitting programs in areas attaining the National Ambient Air Quality Standards are called Prevention of Significant Deterioration ("PSD" or "Major NSR-PSD") programs. 42 U.S.C. § 7471. The United States Environmental Protection Agency ("EPA") has issued a rule with requirements for states to follow in developing Major NSR-PSD programs ("Federal PSD Rule"). 40 C.F.R. § 51.166. Tennessee's programs for both Major and Minor NSR-PSD are found in TENN. COMP. R. & REGS. 1200-03-09-.01 of the Board's implementing rules, including the state rule for Major NSR-PSD at TENN. COMP. R. & REGS. 1200-03-09-.01(4) ("TN PSD Rule"). The TN PSD Rule contains the framework for determining when a new or modified stationary source should be subject to Major or Minor NSR.

The analysis must start with the definition of "stationary source." The TNS PSD Rule defines "stationary source" "any building, structure, facility, or installation which emits or may emit a regulated NSR pollutant—except the activities of any vessel." TENN. COMP. R. & REGS. 1200-03-09-.01(4)(b)(6). This language is echoed in TDEC's Division of Air Pollution Control, General Provisions, definition of "stationary source" as "any building, structure, facility, or installation which emits or may emit any air contaminant. TENN. COMP. R. & REGS. 1200-03-02-.01(ddd).

To determine what constitutes the extent of a stationary source, the definition of "building, structure, facility, or installation" is controlling. These terms are collectively defined as "all of the pollutant-emitting activities which belong to the same industrial grouping, are located on one or more contiguous or adjacent properties, and are under the control of the same person … ." TENN. COMP. R. & REGS. 1200-03-09-.01(4)(b)(7).

It is undisputed that TVA owns and operates the current Kingston Plant and will continue to own and operate the plant after the competition of the Kingston Plant Project. While the natural gas EGUs will necessarily be on a different portion of the property, it is uncontested that the Kingston Plant Project will be on the same 1,255-acre property owned by TVA, known as the Kingston Reservation, in Roane County, Harriman, Tennessee. It is uncontested that the natural gas EGUs will replace the coal EGUS, which are part of the same industrial grouping.

Appalachian Voices' argument that the coal EGUs and the natural gas EGUs are separate stationary sources is not consistent with a plain reading of the applicable definitions. Pursuant to the stationary source definition, new pollutant-emitting activities are only considered "new" stationary sources when no other existing stationary sources in the same industrial grouping are present on the same site controlled by the same person. "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language." *Coffman v. Armstrong Int'l*, 615 S.W.3d 888, 894 (Tenn. 2021) (citing *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). Appalachian Voices' argument is premised on the assumption that the Kingston Plant Project is a new major stationary source.

There are three factors in the definition of stationary source. The first factor is that "all pollutant-emitting activity" must "belong to the same industrial grouping." It is uncontested that

both the coal EGUs and the natural gas EGUs belong to Major Group 49. The second factor is that the activity is "located on one or more *contiguous or adjacent properties*." While Appalachian Voices makes much of the fact that the natural gas EGUs will be in a new facility from the existing coal EGUs, it is undisputed that the same parcel of property, the Kingston Reservation, is involved. Appalachian Voices' argument that the Kingston Plant Project is a new stationary source because it extends beyond the equipment where the current coal EGUs are located disregards the applicable definitions. Appalachian Voices acknowledges the natural gas facility will be on a portion of the existing Kingston Reservation. Lastly, the third factor is that the pollutant-emitting activities must be "under the control of the same person." It is undisputed that TVA currently owns and will continue to own and operate the Kingston Reservation.

The Board determined that the permit allowing the Kingston Plant Project did not grant approval for the construction of a new stationary source. The parties agree that the sole legal issue is whether Tennessee's regulations implementing the Clean Air Act require TVA's natural gas plant to be permitted as a new major stationary source subject to the requirements of the Clean Air Act's Prevention of Significant Deterioration program. The facts and interpretation of the rules and statutes support the Board's determination that the Kingston Plant Project is not a new major stationary source.

The Board determined the Kingston Plant Project constitutes a minor modification or a project. A major modification is defined as "any physical change in or change in the method of operation of a major stationary source that would result in a significant emissions increase … of a regulated NSR pollutant …; and a significant net emissions increase of that pollutant from the major stationary source." TENN. COMP. R. & REGS. 1200-03-09-.01(4)(b)(2).

An existing major stationary source, such as the Kingston Plant, must undergo a PSD review as done here. Any modification to a stationary source being evaluated for Major NSR-PSD applicability is referred to in both the Federal PSD Rule and TN PSD Rule as a "project." Project is defined as "a physical change in, or change in the method of operation of, an existing major stationary source." TENN. COMP. R. & REGS. 1200-03-09-.01(4)(b)(49); 40 C.F.R. § 51.166(b)(51). To qualify as a "project" for NSR purposes, the activities at issue must be "substantially related." 74 Fed. Reg. 2376 & 2378 (Jan. 15, 2009).

The permit requires the coal EGUs to cease operation no later than December 31, 2027. EPA has explained in NSR guidance that the "retirement" of a unit can be a "physical/operational change." The coal EGUs will undergo a "physical change in, or change in the method of operation" because the permit conditions require the Kingston Plant to retire those coal units. As such, the retirement of the coal EGUs is a modification of the Kingston Plant.

Having determined that the retirement of the coal EGUs and the construction of the natural gas EGUs are a modification of an existing stationary source, the analysis turns to whether they are "substantially related" as part of the same "project." Substantially related modifications are "likely to be jointly planned (i.e., part of the same capital improvement or engineering study) and occur close in time and at components that are functionally interconnected." 74 Fed. Reg. 2376 & 2378 (Jan. 15, 2009). The coal EGUs cannot be decommissioned without adding new units to replace the generation capacity lost once those units are decommissioned. It is logical that the building of the replacement units would be jointly planned with the decommissioning of the existing units. As such, the activities are substantially related and constitute a single project. The addition of the natural gas EGUs and the retirement of the coal EGUs are technically and

functionally interconnected activities. As the Kingston Plant Project is a modification of an existing, single, major stationary source, it does not trigger the requirements of a Major-NRS PSD.

It is **CONCLUDED** that the permit regarding the Kingston Plant Project was properly approved as a modification of the existing, single, major stationary source. Accordingly, TDEC's MOTION FOR SUMMARY JUDGMENT is **GRANTED**. TVA's MOTION FOR SUMMARY JUDGMENT is denied as pretermitted by resolution of TDEC's MOTION. Appalachian Voice's MOTION FOR SUMMARY JUDGMENT is **DENIED**. Appalachian Voice's Petition for Permit Appeal is **DENIED**. The September 30-October 2, 2025 hearing is hereby **CANCELED** and shall be removed the docket.

It is so **ORDERED**.

This INITIAL ORDER entered and effective this the **20th day of August 2025**.


CLAUDIA PADFIELD
ADMINISTRATIVE JUDGE
ADMINISTRATIVE PROCEDURES DIVISION
OFFICE OF THE SECRETARY OF STATE


Filed in the Administrative Procedures Division, Office of the Secretary of State, this the **20th day of August 2025**.

**APPALACHIAN VOICES V. TENNESSEE DEPARTMENT OF
ENVIRONMENT AND CONSERVATION**

## NOTICE OF APPEAL PROCEDURES

### REVIEW OF INITIAL ORDER

The Administrative Judge's decision in your case **BEFORE THE TENNESSEE BOARD OF AIR POLLUTION CONTROL (the Board)**, called an Initial Order, was entered on **August 20, 2025.** The Initial Order is not a Final Order but shall become a Final Order <u>unless</u>:

1. **A Party Files a Petition for Reconsideration of the Initial Order:**  You may ask the Administrative Judge to reconsider the decision by filing a Petition for Reconsideration with the Administrative Procedures Division (APD).  A Petition for Reconsideration should include your name and the above APD case number and should state the specific reasons why you think the decision is incorrect.  APD must **<u>receive</u>** your written Petition no later than 15 days after entry of the Initial Order, which is no later than **September 4, 2025.**  A new 30 day period for the filing of an appeal to the Board (as set forth in paragraph (2), below) starts to run from the entry date of an order ruling of a Petition for Reconsideration, or from the twentieth day after filing of the Petition if no order is issued.  Filing instructions are included at the end of the document.[1]

   The Administrative Judge has 20 days from receipt of your Petition to grant, deny, or take no action on your Petition for Reconsideration.  If the Petition is granted, you will be notified about further proceedings, and the timeline for appealing (as discussed in paragraph (2), below) will be adjusted.  If no action is taken within 20 days, the Petition is deemed denied.  As discussed below, if the Petition is denied you may file an appeal, which must be **<u>received</u>** by APD no later than 30 days after the date of denial of the Petition.  *See* Tenn. Code Ann. §§ 4-5-317 and 4-5-322.

2. **A Party Files an Appeal of the Initial Order and/or Other Earlier Orders:**  You may appeal the decision, together with any earlier order issued by the Administrative Judge you specifically choose to appeal, to the Board, by filing an Appeal of the Initial Order with APD.  An Appeal of the Initial Order should include your name and the above APD case number and state that you want to appeal the decision to the Board, specifying any earlier order(s) issued by the Administrative Judge that you also want to appeal, along with the specific reasons for your appeal.  APD must **<u>receive</u>** your written Appeal no later than 30 days after the entry of the Initial Order, which is no later than **September 19, 2025.**[2]  The filing of a Petition for Reconsideration is not required before appealing.  *See* Tenn. Code Ann. § 4-5-317.

3. **The Board Decides to Review the Initial Order:**  In addition, the Board may give written notice of its intent to review the Initial Order within the longer of 30 days or 7 days after the first board meeting to occur after entry of the Initial Order.  No later than 7 days after the entry of an Initial Order, TDEC shall file, and serve, a Notice of Filing containing the date of the next Board meeting.  No later than 7 days after the next Board Meeting, TDEC shall file, and serve, a Notice of Filing setting forth what action, if any, the Board took with respect to the Initial Order.

---

[1] See Tenn. Code Ann. §§ 68-201-108 (Air Pollution Control Board); 68-211-113, 68-212-113, 68-212-215, 68-215-115, 68-215-119 (Underground Storage Tanks and Solid Waste Disposal Control Board); Tenn. Code Ann. §§ 60-1-401, 69-3-110, 68-221-714 (Board of Water Quality, Oil & Gas).

[2] The deadline to file an appeal of the initial order (15 versus 30 days) in cases brought under the Tennessee Water Quality Control Act of 1977, Tenn. Code Ann. § 69-3-101, et seq., is an issue currently under review in a case before the Tennessee Supreme Court. *Jamesway Construction, Inc. v. David Salyers, P.E.*, No. M2023-01704-SC-R11-CV.

## NOTICE OF APPEAL PROCEDURES

If either of the actions set forth in paragraphs (2) or (3) above occurs prior to the Initial Order becoming a Final Order, there is no Final Order until the Board renders a Final Order affirming, modifying, remanding, or vacating the administrative judge's Initial Order.

If none of the actions in paragraphs (1), (2), or (3) above are taken, then the Initial Order will become a Final Order. **In that event, YOU WILL NOT RECEIVE FURTHER NOTICE OF THE INITIAL ORDER BECOMING A FINAL ORDER.**

### STAY

In addition, you may file a Petition asking the Administrative Judge for a stay that will delay the effectiveness of the Initial Order. A Petition for a stay must be **received** by APD within 7 days of the date of entry of the Initial Order, which is no later than **August 27, 2025**. *See* TENN. CODE ANN. § 4-5-316. A reviewing court also may order a stay of the Final Order upon appropriate terms. *See* TENN. CODE ANN. §§ 4-5-322 and 4-5-317.

### REVIEW OF A FINAL ORDER

When an Initial Order becomes a Final Order, a person who is aggrieved by a Final Order in a contested case may seek judicial review of the Final Order by filing a Petition for Review "in the Chancery Court nearest to the place of residence of the person contesting the agency action or alternatively, at the person's discretion, in the chancery court nearest to the place where the cause of action arose, or in the Chancery Court of Davidson County," within 60 days of the date the Initial Order becomes a Final Order. *See* TENN. CODE ANN. § 4-5-322. The filing of a Petition for Reconsideration is not required before appealing. *See* TENN. CODE ANN. § 4-5-317.

### FILING

Documents should be filed with the Administrative Procedures Division by email *or* fax:

Email: APD.filings@tnsos.gov

Fax: 615-741-4472

In the event you do not have access to email or fax, you may mail or deliver documents to:

Secretary of State
Administrative Procedures Division
William R. Snodgrass Tower
312 Rosa L. Parks Avenue
Nashville, TN 37243-1102

Exhibit B

## STATE OF TENNESSEE
## AIR POLLUTION CONTROL BOARD

| | | |
|---|---|---|
| IN THE MATTER OF:<br>**Construction Permit No. 981915** | ) | DIVISION OF AIR POLLUTION CONTROL |
| | ) | |
| **APPALACHIAN VOICES,**<br>    *Petitioner,* | ) | CASE NUMBER APC24-0247 |
| | ) | |
| *v.* | ) | |
| | ) | |
| **DEPARTMENT OF ENVIRONMENT AND CONSERVATION**<br>    *Respondent,* | ) | DOCKET NUMBER 04.09-245974J |
| | ) | JUDGE PADFIELD |
| | ) | |
| *and* | ) | |
| | ) | |
| **TENNESSEE VALLEY AUTHORITY,**<br>    *Intervenor.* | ) | |

## NOTICE OF FILING

The Department of Environment and Conservation, by and through the undersigned counsel, hereby provides notice that the Air Pollution Control Board ("Board") met on October 8, 2025 at the following address:

Davy Crockett Tower, Conference Room 1–A
500 James Robertson Parkway
Nashville, Tennessee 37243

During the meeting, the Board voted unanimously not to review the Initial Order Granting Motion for Summary Judgment entered in this matter by Judge Claudia Padfield on August 20, 2025. Additional meeting details—including the meeting's agenda and a video of the meeting—may be found on the Board's website: https://www.tn.gov/environment/about-tdec/boards-and-commissions/board-air-pollution-control-board.html.

1

TN SOS-APD Fri, Oct 10, 2025 04:03 PM : 1 of 3 pages filed

Dated this 10th day of October 2025.

Respectfully submitted,

 /s/ Michael D. Lewis
Michael D. Lewis (TN BPR # 033408)
Austin M. Moore (TN BPR # 035258)
Office of General Counsel
Department of Environment and Conservation
Davy Crockett Tower, 5th Floor
500 James Robertson Parkway
Nashville, TN 37243
Telephone: (615) 308-2770
Michael.D.Lewis@tn.gov
Austin.Moore@tn.gov

*Counsel for Department of Environment and Conservation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been sent to the following counsel of record by electronic mail only, on this 10th day of October 2025:

Delaney King, Esq.
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
Sent via email only to: dking@selctn.org

Jennifer L. Brundige, Esq.
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902
Sent via email only to: jlbrundige@tva.gov

George Nolan, Esq.
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
Sent via email only to: gnolan@selctn.org

Frances Regina Koho, Esq.
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902
Sent via email only to: frkoho@tva.gov

Keri N. Powell, Esq.
Southern Environmental Law Center
10 10th Street NW, Suite 1050
Atlanta, GA 30309
Sent via email only to: kpowell@selcga.org

Caroline E. Cress, Esq.
Southern Environmental Law Center
136 E Rosemary Street, Suite 500
Chapel Hill, NC 27514
Sent via email only to: ccress@selcnc.org

*/s/ Michael D. Lewis*
**Michael D. Lewis**
**Senior Associate Counsel**

3

TN SOS-APD Fri, Oct 10, 2025 04:03 PM : 3 of 3 pages filed

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br><br>25-1606-III |
|---|---|---|

| PLAINTIFF<br>Appalachian Voices | DEFENDANT<br>Tennessee Board of Air Pollution Control, Tennessee Department of Environment & Conservation, and Tennessee Valley Authority |
|---|---|

TO:   (NAME AND ADDRESS OF DEFENDANT)

Tennessee Board of Air Pollution Control
c/o Jonathan Skrmetti
Tennessee Attorney General & Reporter
500 Charlotte Ave
Nashville, TN 37219

Method of Service:

- ☐ Certified Mail
- ☐ Davidson Co. Sheriff
- ☐ *Comm. Of Insurance
- ☐ *Secretary of State
- ☐ *Out of County Sheriff
- ☑ Private Process Server
- ☐ Other
     *Attach Required Fees

List each defendant on a separate summons.

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>Delaney King<br>Southern Environmental Law Center<br>1033 Demonbreun Street, Suite 205<br>Nashville, TN 37206 | FILED, ISSUED & ATTESTED<br>**FOR CLERK USE ONLY** *11/18/25*<br><br>**MARIA M. SALAS, Clerk and Master**<br>By:                    1 Public Square<br>                        Suite 308<br>                        Nashville, TN 37201<br><br>*s/ Julie Spencer*<br>**Deputy Clerk & Master** |
|---|---|

**NOTICE OF DISPOSITION DATE**

   The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

   If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | Sheriff |

***Submit one original plus one copy for each defendant to be served.**

⚕ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served  _____   ☐ Not Found
☐ Not     _____   ☐ Other _____
   Served

| Date of Return: | By: |
| Agency Address: | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____ 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the ___ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____ 20____

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this _____ day of , 20___.** Signature of _____ Notary Public or _____ Deputy Clerk  My Commission Expires: _____ | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
1 Public Square
Suite 308
Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

### CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master  By: _____  D.C. & M. |

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>25-1606-III |
|---|---|---|

| PLAINTIFF<br>Appalachian Voices | DEFENDANT<br>Tennessee Board of Air Pollution Control, Tennessee Department of Environment & Conservation, and Tennessee Valley Authority |
|---|---|

**TO:** (NAME AND ADDRESS OF DEFENDANT)

Tennessee Department of Environment & Conservation
c/o Jonathan Skrmetti
Tennessee Attorney General & Reporter
500 Charlotte Ave
Nashville, TN 37219

Method of Service:

- ☐ Certified Mail
- ☐ Davidson Co. Sheriff
- ☐ *Comm. Of Insurance
- ☐ *Secretary of State
- ☐ *Out of County Sheriff
- ☑ Private Process Server
- ☐ Other

List each defendant on a separate summons.     *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

Attorney for plaintiff or plaintiff if filing Pro Se:
(Name, address & telephone number)
Delaney King
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, TN 37206

FILED, ISSUED & ATTESTED

**FOR CLERK USE ONLY** *11/18/25*

**MARIA M. SALAS, Clerk and Master**
By:                     1 Public Square
                        Suite 308
                        Nashville, TN 37201

*s/Julie Spencer*

**Deputy Clerk & Master**

### NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | |
| | **Sheriff** |

***Submit one original plus one copy for each defendant to be served.

⚖ADA Coordinator, Maria M. Salas (862-5710)

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____ ☐ Not Found
☐ Not _____ ☐ Other _____
Served

| Date of Return: | By: |
|---|---|
| Agency Address: | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____ 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____ . On the ___ day of _____ , 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____ 20___

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this _____ day of _____ , 20___.** Signature of _____ Notary Public or _____ Deputy Clerk  My Commission Expires: _____ | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):
    Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to: Clerk & Master
                1 Public Square
                Suite 308
                Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master  By: _____                                  D.C. & M. |
|---|---|

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | CASE FILE NUMBER<br>25-1606-III |
|---|---|---|

| PLAINTIFF<br>Appalachian Voices | DEFENDANT<br>Tennessee Board of Air Pollution Control, Tennessee Department of Environment & Conservation, and Tennessee Valley Authority |
|---|---|

TO: (NAME AND ADDRESS OF DEFENDANT)

Tennessee Valley Authority
c/o Don Moul, President and CEO
400 West Summit Hill Drive
Knoxville, TN 37902

Method of Service:

- [x] Certified Mail
- [ ] Davidson Co. Sheriff
- [ ] *Comm. Of Insurance
- [ ] *Secretary of State
- [ ] *Out of County Sheriff
- [ ] Private Process Server
- [ ] Other
  *Attach Required Fees

List each defendant on a separate summons.

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>Delaney King<br>Southern Environmental Law Center<br>1033 Demonbreun Street, Suite 205<br>Nashville, TN 37206 | FILED, ISSUED & ATTESTED<br>**FOR CLERK USE ONLY** 11/18/25<br><br>**MARIA M. SALAS, Clerk and Master**<br>By:        1 Public Square<br>          Suite 308<br>          Nashville, TN 37201<br><br>*s/ Julie Spencer*<br>**Deputy Clerk & Master** |
|---|---|

**NOTICE OF DISPOSITION DATE**

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | |
| | **Sheriff** |

***Submit one original plus one copy for each defendant to be served.

♿ADA Coordinator, Maria M. Salas (862-5710)

# RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served                          _____        ☐ Not Found
☐ Not                   _____                    ☐ Other _____
   Served

| Date of Return: | By: |
|---|---|
| Agency Address: | Sheriff/or other authorized person to serve process |

# RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____ 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case                                    to

the defendant _____ . On the ____ day of _____ , 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____ 20 ____

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this _____ day of , 20___.** Signature of _____ Notary Public or _____ Deputy Clerk  My Commission Expires: _____ | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
1 Public Square
Suite 308
Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

# CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master  By: *s/Julie Spencer* 11/18/25 D.C. & M. |
|---|---|